This case is here to discuss the sufficiency of the evidence to uphold his conviction for conspiracy to distribute cocaine and possession of cocaine with intent to distribute. The facts of Mr. Rivas' case are fairly in line with the facts of U.S. v. Escobar Ortega in that several of the factual issues involved in that case were also involved in Mr. Rivas' and we believe that that taken as a whole demonstrates that there is insufficient evidence to uphold his conviction. Some of those facts involved that even when taken in light most favorable to the prosecution still demonstrate there is insufficient evidence. Those facts would be him and his voice not being found on any of the wiretaps and initially they had believed he was, but it later became known that it was a different Luis. His phone that was seized from him in the truck was not on any of the wiretaps. The phone number was not located on any of the wiretaps. No co-conspirators who proffered and who took pleas identified Mr. Rivas. His fingerprints were not located on the cocaine. The cocaine itself was so concealed in the vehicle that it took hours for the police to find it even with a drug dog. There was no real smell from the cocaine because it was wrapped within plastic containers and then sealed within a plastic container. Those are all facts from which the jury could have found your client innocent, but there were several other facts from which it seemed the jury could infer knowledge, such as the quantity of the cocaine, the fact that he drove to the places that were mentioned in the wiretap, that he was the sole driver, that his passenger didn't drive, that some witness saw the Acura stop at the Progressive Produce and someone saw him being handed the box and the bag. So we kind of have evidence from which you could draw either inference and the jury drew the inference that he knew. Yes, there is evidence that goes both ways as in any trial. However, we believe that when you take the whole of the evidence and you do it in light most favorable to the prosecution that a rational jurist could not have convicted him, that they never actually proved knowledge. There was definitely evidence of conspiracy as a whole. There were several people indicted, but evidence tying him directly to the conspiracy was scant at best. It was more speculation than actual inferences. But of course, I mean, the difference from Esquivel is he was driving the truck. There are two big ones. One, he was driving in control of the truck, which was not true in Esquivel. And two, there was an episode which looked like a drug transaction. Yes. And three, there were these containers that looked like they were into which the drugs fit. Yes, he was driving the vehicle. So I don't see the factual similarity. And it would seem to me more useful to just argue it straight up about why that isn't enough, why those three things together are not enough. Well, those three things together can be taken to demonstrate also, I believe, that he had no knowledge. He was a driver of a vehicle that had a legitimate delivery. It was a legitimate produce delivery. There was paperwork to prove that, that he took his potatoes and he delivered them as he was supposed to. The wiretaps never show him actually speaking on them. In fact, they show that several people are confused about the location of the truck. If he had been communicating with any of the members of the conspiracy, they wouldn't have been confused as to where he was. So they were trying to use identifiers to place the vehicle. Now, we're not saying that no one in Revis Trucking was involved because the evidence seems to show that somebody was. But that person was not Luis Revis. The evidence shows that it's much more likely it was Miguel Revis, his brother. And Miguel Revis was along on that ride. He had the ability to notify people outside of his brother's knowledge of his location, which could be why he didn't know exactly where they were or exactly where they were going, because he was not the driver. He was merely, in this case, a passenger who was along to learn how to drive. And he also was in the passenger seat and the officer had identified that somebody had come up and spoken through the passenger window. And because he was not the driver and he was not the one in charge of the delivery, he didn't get out of the vehicle and go into the office at Progressive Produce and deliver the bills of lading so that they could get paid. He stayed behind in the vehicle. So if, in fact, a delivery occurred at that time, it's reasonable, and you can reasonably infer from that, that Miguel received the delivery. Miguel was the one that put everything back there, not Luis. So we believe that based on that information, along with the fact, the other factors I identified, that they never actually were able to prove beyond a reasonable doubt that he had knowledge, that there was a drug conspiracy or that he was involved in the drug conspiracy. Thank you. Thank you. Good afternoon, Your Honor. May it please the Court. Jennifer Cho on behalf of the United States of America. I don't have much to add beyond what I've included in the government's written brief. I do want to clarify a couple of things that counsel stated on the record, which is that when the evidence is being construed on review in favor of the prosecution, the absence of things such as the voices on the calls of the defendant himself, that does not preclude a construal of the evidence toward guilt. In fact, if the theory of the defense is that the brother, Miguel Rivas, the passenger, was certainly involved in the drug transaction, Miguel Rivas' voice also does not appear on the calls. Was he indicted? Yes, he was, and he currently remains a fugitive. The other thing I'd just like to note, in addition to evidence that would support the construal in favor of guilt, is something that counsel did not refer to, which is in addition to the coordination between the calls and the movement of the truck, all of those movements were controlled solely by the defendant. He was the only driver. And in addition to these coordinated movements, first to Best Avenue on Rosecrans and Norwalk, and then to Peachtree Avenue in the City of Commerce, after the truck was seized, another major difference between this defendant and the defendant in Esquivel-Ortega is that this defendant had an unnaturally calm demeanor and did not behave in a way that one would expect somebody who did not know that there were drugs in his truck to behave when the truck, his livelihood and his only means. I mean, that's sort of the classic problem we have with the government argument in these cases, which is if they're nervous, that proves they're guilty. And if they're not nervous, that proves they're guilty. So that doesn't seem very helpful. It is one way of distinguishing Esquivel-Ortega. Unless the Court has other questions, I'll submit other briefs. Well, I guess the ultimate question is how little evidence can you get a conviction, a legitimate conviction for beyond a reasonable doubt. I mean, there are in fact many other. It would seem that particularly the evidence with regard to the transaction that they saw, they didn't see any drugs. They didn't see Rivas being involved in the transaction because apparently it went to the Ambassador door. The evidence, I mean, I couldn't tell because I didn't see the pictures. Maybe they're there, about what they mean when they say, you know, that the cocaine didn't fit into these containers. I mean, they seem like they were pretty loose containers that a lot of stuff would have fit in. Yes, Your Honor. How much? Well, let me provide two answers to that. The first is that when Detective Duarte was conducting surveillance of Defendant's truck when it was parked outside of the warehouse and the drug couriers and the Acura approached the truck, although the bag and the box were ultimately passed in through the passenger side, the very first contact was made at the driver's side of the truck. The passenger of the Acura got out of the Acura and went up to the driver's side of the truck. And there's never been any dispute that the Defendant is the only person who ever sat in the driver's seat of that truck. So the very first contact between the drug delivery couriers and that truck were through the driver's side. Even if they were drug delivery carriers, was a surmise. And the second point that I would make is that the photographs are very telling. They are included in the government's excerpts of record. I do have color copies if the Court would like for me to file them. But at – excuse me one second. When the box and the duffel bag were recovered from the truck, the detectives deliberately reconstructed the box. It had been smashed up and put inside the bag. The detectives deliberately reconstructed the box and took the 20 wrapped packages of cocaine to see if they would fit into the box and into the duffel bag. And in fact, it was a perfect fit. And I direct the Court to GER page 424, which is a photograph of the duffel bag that perfectly contains a portion of the stacked cocaine packages. And to GER 426, which perfectly fit the remaining packages of cocaine. So all 20 packages did in fact perfectly fit into the bag and to the box. Additionally, the jury heard evidence that the drug dog alerted to the bag and the box when the drug dog conducted the sniff search of the truck. And so there is – the question is not how little evidence do you need to affirm the jury's conviction. There is a wealth of information here from the coordinated calls giving the very detailed directions as to the movement of the trucks, the defendant's concession that those calls were about his truck, that that was his truck, to the surveillance of the truck showing that the defendant was in the truck at the time that the box and the bag were passed into the truck, that the Acura passenger made initial contact with the driver's side of the truck, and that – and I would also note the evidence that the defendant and his brother made numerous rest stops on the way to the warehouse when they stopped at rest areas, when they got out of the bathroom – excuse me, got out of the truck to go to the bathroom, got out of the truck to go to restaurants, but their behavior changed completely after the bag and the box of they then stayed in the truck, they parked on an isolated shoulder to spend the night instead of going to a rest stop only a couple miles away that they knew of, because that was, in fact, the rest stop that they asked to be dropped off at when the truck was seized. And so taking this evidence in the light most favorable to the government, the conviction should be affirmed. And I'll note also that the evidence for the most part, the defendant's testimony was not based on evidence that the detectives had seen on surveillance and that any differences in that – in his testimony or inconsistencies are to be construed in the light most favorable to the government. So unless the Court has other questions, I'll submit on the written brief. Actually, would the Court like for the government to file the color copies of the photographs? They are included in the government's excersor record. They were color copies. Are they? I don't know how they turned out in your prison. They're in the GER. I just didn't know if they turned out to be in color. If the Court would like for me to file the color copies, then I have to do so. Whatever makes you comfortable. If they're already in color, then I won't. I won't have to file them. Thank you. I would like to respond just to a few things that she's said. Perhaps the Court has questions first. Several of the issues that she raised, there were also other issues that go along with that as a companion, such as the alleged drug transaction that occurred. The officer testified he never actually saw who was sitting in the driver's seat of that vehicle. It was parked. So although Luis was the driver when it was moving, anybody could have been sitting in it when it was stationary. Also, after this transaction occurred, they followed this Acura, and he said he had two surveillance teams. One split off and followed the semi-truck, and the second one split and followed the Acura. They either split off surveillance entirely from the Acura or lost them. But they never actually interviewed the people in the Acura. They never identified them and interviewed them and asked them, hey, did you deliver a bunch of cocaine to these people? So there was no additional evidence on that transaction. If they had, I'm sure they would have presented it in court, but through all the information that we had, nobody actually said that was, in fact, a drug transaction. But they delivered something. I'm sorry? They delivered something in a bag and a box. A bag and a box, yes. But we don't know what was in it, and there was no evidence directly. And when the bag and the box were found, they were empty? Yes, ma'am. They were empty. They were located under the bunk. And they were never tested. The inside was never tested for fingerprints, DNA, or drugs. They were just simply seized as part of the investigation. How long after the delivery was the, were they eventually stopped? They were stopped approximately 10 to 12 hours later. They had left, I'm sorry, more like eight hours later. They had left Progressive Produce after midnight around 2 a.m. And they had not received their instructions on where they were going next, make their next pickup to work their way back up to Idaho. So they pulled on the side of the road, they waited for the call, and then the next morning around 8.30 they got a call to head north towards Ventura to make a pickup. So in that time the police just surveilled them, pulling their truck on the side of the road, shutting down for the night and sleeping, and then starting the vehicle up again when they received a call on where to go. So they were shut down for about six and a half hours. And he also had log books that showed that information, although they weren't put into evidence. As far as his request of where to go for a, to make a phone call later, his phones and everything were part of the vehicle that was seized.  So he requested a ride, as somebody would when they're sitting out on the side of the road. He requested a ride to the nearest rest stop that he could think of so he could get a ride and leave. And I would also note that Miguel Rivas, within a couple weeks of this happening, fled to Mexico. He, as far as we're aware, and I believe the U.S. Attorney's Office is aware, he's not returned to the U.S. However, Mr. Rivas, when he learned of the indictment years later, because they never arrested him, they let him go at the scene and they didn't come after him, he self-surrendered. And he faced prosecution. He showed up at every court date, and he took this very seriously. And I don't believe that behavior is consistent with somebody who was trafficking in drugs. He didn't testify at trial? I'm sorry? Did he testify at trial? Yes, ma'am, he did. And he said what? I'm sorry? That he didn't know this was there, basically? Yes, as she mentioned, his testimony was fairly similar, actually. It tracked pretty closely to what the DEA was testifying. The only difference was essentially he said he was not aware of any drug activities his brother was involved in, and there were some minor discrepancies as to time and when he got out of the truck at Progressive Produce. But aside from that, it was actually fairly similar. Thank you. All right. Great question. Thank you very much. Thank you. All right. The Court will adjourn.
judges: Pregerson, Wardlaw, Berzon